IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Patsy Ann Hay,                           )      Civil Action No. 8:15-cv-00236-JDA
                                         )
                    Plaintiff,           )      **ORDER**
                                         )
          vs.                            )
                                         )
Carolyn W. Colvin,                       )
Commissioner of Social Security,         )
                                         )
                    Defendant.           )

          This matter is before the Court for a final Order pursuant to Local Civil Rules

73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition

by a Magistrate Judge [Doc. 7]; and the Honorable Patrick Michael Duffy's January 21,

2015 Order of reference [Doc. 11].  Plaintiff brought this action pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of

Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance

benefits ("DIB") and supplemental security income ("SSI").[1]   For the reasons set forth

below, the decision of the Commissioner is affirmed.

## **PROCEDURAL HISTORY**

          In July 2011, Plaintiff filed applications for DIB and SSI, alleging disability beginning

on November 30, 2009.[2]  [R. 196–209.]   The claims were denied initially and on

---

          [1]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social
Security after a hearing under paragraph (1) shall be subject to judicial review as provided
in section 405(g) of this title to the same extent as the Commissioner's final determinations
under section 405 of this title."  42 U.S.C. § 1383(c)(3).

          [2]Plaintiff subsequently amended her onset of disability date to December 1, 2011.  [R.
297–99.]

reconsideration by the Social Security Administration ("the Administration"). [R. 79–140.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on June 7, 2013, ALJ Kelly Wilson held a hearing on Plaintiff's claims. [R. 38–78.]

On July 26, 2013, the ALJ issued her decision, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 20–37.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2014, and had not engaged in substantial gainful activity since December 1, 2011, the alleged onset date. [R. 22, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative joint disease, depression, and borderline intellectual functioning. [R. 22, Finding 3.] At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 23, Finding 4.] The ALJ expressly considered Listings 12.02, 12.04, and 12.05. [R. 23–25.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant must avoid concentrated exposure to noise and hazards in the workplace such as industrial machinery and unprotected heights. The claimant is able to perform simple tasks, but no detailed or complex tasks. She is able to perform a low stress job, which I have defined as requiring occasional decision-making, occasional adaptation to change in a work setting, and no high production tasks such as high volume assembly line work. The claimant can have

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

occasional contact with the public, but should not perform work that requires customer service, sales, or counter work. She can work in proximity to others, but would perform best in more solitary work task.

[R. 25, Finding 5.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff was capable of performing her past relevant work as an agricultural inspector, hand riveter, and small production assembler worker. [R. 31, Finding 6.] Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from November 30, 2009, through the date of the decision. [R. 32, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Appeals Council declined. [R. 1–6]. Plaintiff filed this action for judicial review on January 16, 2015. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and should be remanded because the ALJ erred in failing to consider the side effects of Plaintiff's medications pursuant to 20 C.F.R. § 404.1529, SSR 96-7p, and SSR 96-8P; by failing to accord proper weight to the opinion of Plaintiff's treating/examining physician Dr. John Bradley; and by failing to properly evaluate Plaintiff's mental impairment under Listing 12.05C. [Doc. 17.] The Commissioner, however, contends the decision is supported by substantial evidence and that the ALJ properly found Plaintiff's subjective complaints, including her allegations of disabling medication-related side effects, were only partially credible; properly evaluated Dr. Bradley's disability opinion under the regulations; and properly evaluated Plaintiff's mental impairments using the special technique prescribed in the regulations. [Doc. 18.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.

*See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court

5

to find the claimant disabled).    Where the court cannot discern the basis for the

Commissioner's decision, a remand under sentence four is usually the proper course to

allow the Commissioner to explain the basis for the decision or for additional investigation.

*See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power*

*& Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176,

1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its

reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v.*

*Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor

the Appeals Council indicated the weight given to relevant evidence).  On remand under

sentence four, the ALJ should review the case on a complete record, including any new

material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the

8

national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must

make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C. *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5] 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D. *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's

opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

16

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Medication Side Effects**

Plaintiff argues the ALJ failed to document any consideration of how Plaintiff is limited by the side effects of her medication.  [Doc. 17 at 9–10.]  The Commissioner contends, however, that the ALJ adequately considered all of Plaintiff's subjective complaints, including the side effects of her medication.  [Doc. 18 at 15.]

In reaching a determination regarding a claimant's RFC, the ALJ must base the decision on "all of the relevant evidence in the case record," including side effects of medication.  SSR 96-8P, 61 Fed. Reg. 34,474-01, at 34, 477 (July 2, 1996).  The ALJ is not, however, required to accept unquestioningly all alleged side effects of medications; complaints of side effects may properly be discredited by inconsistent evidence, as long

as the ALJ fully explains why the claimant's testimony should be discredited.  *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (relying upon the claimant's activities to discredit "allegedly disabling 'doped up' effect" of medication).

In the hearing before the ALJ, Plaintiff testified that her medications make her sluggish and depressed.  [R. 54.]  In her decision, the ALJ noted the negative side effects of Plaintiff's medications and also noted how the medications improved or controlled Plaintiff's impairments.  [R. 25.]  A review of Plaintiff's medical history fails to establish that Plaintiff complained of any medication side effects to her treating physicians.  Plaintiff complained of generalized fatigue [R. 383, 430], and treatment notes reflect that Plaintiff experienced fainting/light-headedness, numbness, dizziness, headaches, and balance problems [R. 457, 461]; however, these symptoms were not ascribed to medications and were typically associated with her migraine headaches [R. 548, 574].  Further, the record contains no evidence of any physician ever opining that the side effects from Plaintiff's medications rendered her unable to work.  As stated, the ALJ is not required to accept unquestioningly all alleged side effects of medications.  *See Johnson*, 434 F.3d at 659.

After reviewing the record, the Court concludes that the ALJ's failure to specifically identify how the alleged side effects limit Plaintiff does not constitute reversible error. Substantial evidence supports both the ALJ's credibility analysis and RFC determination, and the ALJ mentioned Plaintiff's side effects; even if the ALJ's failure to explicitly mention the limitations from Plaintiff's alleged side effects was error, such error was harmless and does not require reversal.  *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its

18

action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted). Accordingly, the decision of the Commissioner should not be reversed on this ground.

**Weight Assigned to Medical Opinions**

Plaintiff contends the ALJ failed to assign proper weight to the opinion of Dr. Bradley in that it was not contradicted by any other examining source. [Doc. 17 at 10–12.] Specifically, Plaintiff contends the limitations noted in Plaintiff's ability to maintain attention, organize thoughts, and develop solutions were never considered by the ALJ in formulating the RFC. [*Id*. at 10.] The Commissioner argues the ALJ properly determined that Dr. Bradley's disability opinion merited little weight under the regulations. [Doc. 18 at 16–20.]

With respect to medical source opinions regarding a claimant's impairments and limitations, the ALJ is obligated to evaluate and weigh these medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

19

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the

20

claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

### Dr. Bradley's Treatment Notes and Opinion

Plaintiff was referred to Dr. Bradley by her attorney for a psychological evaluation, and on October 1, 2012, Plaintiff was evaluated to determine the level of her intellectual, academic, and social functioning. [R. 497.] Dr. Bradley noted that Plaintiff graduated from high school and earned eight units toward graduation in special education classes. [*Id*.] After graduating, Plaintiff reported working as a cashier, as a caregiver for handicapped individuals, at Wal-Mart, on assembly lines, and as a USDA inspector. [*Id*.] Dr. Bradley noted that Plaintiff reported several medical problems, including fibromyalgia; muscle and joint pain; headaches; and a number of symptoms of depression such as not wanting to get out of bed in the morning, difficulty sleeping, fatigue, sadness, crying spells, poor concentration, poor self-esteem, and suicidal thoughts. [R. 497–98.] Plaintiff also reported that she did few household chores such as cleaning and cooking, instead relying on the help of her children. [R. 498.] She reported grocery shopping with her daughter and driving where she needs to go. [*Id*.]

Dr. Bradley noted that Plaintiff was appropriately dressed and groomed, arrived at the appropriate time, and that her gait, posture, and activity level were all normal. [*Id*.] Plaintiff was alert and oriented to time, place, and person; maintained good eye contact; however, her affect or emotional responsiveness was flat, and her mood was anxious and depressed. [*Id*.] Plaintiff was able to communicate using simple language; her quality of speech was normal; she spoke at an appropriate rate; and the content of her conversation was appropriate. [*Id*.] Plaintiff did not display evidence of delusions, hallucinations,

21

phobias, obsessions, compulsions, or homicidal thinking. [*Id*.] Nevertheless, Plaintiff claimed to have suicidal thoughts without current intent. [*Id*.] Dr. Bradley found that Plaintiff's cognitive processes indicated that her attention and concentration skills were below normal, her memory appeared adequate, her insight was fair, and her judgment was good. [*Id*.]

Dr. Bradley concluded that Plaintiff scored in the borderline mentally retarded range of intelligence with a full scale IQ of 76. [R. 499.] Plaintiff's word reading was on a grade equivalent of 7.4, reading comprehension on a grade equivalent of 7.1, and math computation on a grade equivalent of 4.9. [R. 500.] Dr. Bradley noted that Plaintiff's achievement was below average in reading and mathematics for persons of her age. [*Id*.] Dr. Bradley diagnosed Plaintiff with major depressive disorder, recurrent, moderate and borderline mental retardation. [R. 501.]

On the same day, Dr. Bradley completed a Mental Residual Functional Capacity Assessment form for Plaintiff, indicating the following limitations in Plaintiff's ability to sustain the activity over a normal workday and workweek, on an ongoing basis:

- Not significantly limited in her ability to:

  - understand and remember very short and simple instructions;
  - carry out very short and simple instructions; and
  - ask simple questions or request assistance.

- Moderately limited in her ability to:

  - remember locations and work-like procedures;
  - sustain an ordinary routine without special supervision;
  - work in coordination with or proximity to others without being distracted by them;
  - make simple work-related decisions;
  - interact appropriately with the general public;

- • accept instructions and respond appropriately to criticism from supervisors;
    - • get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
    - • maintain socially appropriate behavior;
    - • respond appropriately to changes in work setting;
    - • be aware of normal hazards and take appropriate precautions; and
    - • travel in unfamiliar places or use public transportation.

- • Markedly limited in her ability to

    - • understand and remember detailed instructions;
    - • carry out detailed instructions;
    - • maintain attention and concentration for extended periods;
    - • perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;
    - • complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rests periods; and
    - • set realistic goals or make plans independently of others.

[R. 481–83.]

Likewise, Dr. Bradley completed a psychiatric review technique form, concluding that Plaintiff meets the requirements of Listings 12.04 and 12.05. [R. 484–96.] Dr. Bradley also found that Plaintiff had marked limitations in her restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace; he found insufficient evidence to determine the existence of episodes of decompensation. [R. 494.]

### The ALJ's Treatment of Dr. Bradley's Opinion

The ALJ explained her consideration of Dr. Bradley's opinion as follows:

> I have considered the medical source statements submitted by Dr. Bradley, the consultative examiner (Exhibits 11F–13F). Dr. Bradley opined that the claimant has marked limitations in every area of mental functioning (Exhibit 12F, p.11). In a mental residual functional capacity assessment, Dr. Bradley assessed the claimant as being off task 25% of the time while

23

performing mental activities (Exhibit 11F, p.1). However, when breaking down the claimant's individual limitations, Dr. Bradley assessed the claimant as either not significantly limited or only moderately limited in fourteen of twenty categories and only moderately limited in the remaining six (Exhibit 11F, p.1 - 3). I note that Dr. Bradley's opinion is not consistent with the other evidence in the record, including the fact that the claimant has been able to work despite her mental disorders in the past. Further, she has sought little treatment for her allegedly disabling mental disorders, which suggests her symptoms are not as severe as alleged. Given the internal inconsistencies, as well as a lack of support from the claimant's medical and work history as a whole, these statements from Dr. Bradley are given little weight.

[R. 30.]

### *Discussion*

In this case, the ALJ provided detailed and thorough reasons for discounting the opinion of Dr. Bradley. As an initial matter, the ALJ noted that Plaintiff had not received mental health treatment for over a year at the time of her hearing, suggesting that her symptoms were tolerable. [R. 29.] Further, the ALJ noted that Plaintiff's activities of daily living conflict with her allegations of complete disability in that she can care for her personal needs, clean dishes, and do laundry. [R. 30.] The ALJ also noted that functional reports filed by Plaintiff indicate she is capable of performing more activities around the house, such as go to doctor appointments and therapy, do back exercises, spend time with her children, and pray [R. 252]; as well as watch TV, fix a sandwich or salad, walk a little while outside or sit in the yard, cook dinner occasionally and read until bed time [R. 276]. And contrary to Dr. Bradley's finding that Plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods, Plaintiff reported that she had no problem paying attention. [R. 256.]

24

After a review of the decision and the record in this case, the undersigned finds that the ALJ properly considered and evaluated Dr. Bradley's opinion as part of her analysis of the overall record and evidence in this case and provided an explanation for her treatment of Dr. Bradley's opinion.  The record contains substantial evidence to support the findings and conclusions of the ALJ, and Plaintiff's arguments to the contrary are without merit. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding it is the responsibility of the ALJ, and not of the courts, to weigh the evidence and resolve conflicts in that evidence); *see also Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) ("What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" (alterations in original)).   Accordingly, the decision of the Commissioner should not be reversed on this ground.

**Special Technique**

Plaintiff contends the ALJ erred by failing to find that the severity of Plaintiff's mental impairments met or equaled Listing 12.05C. [Doc. 17 at 12–13.] Plaintiff contends the ALJ "failed to comply with the procedure for evaluating mental impairments set forth in 20 C.F.R. §404.1520a in that she failed to document the application of the psychiatric review technique for (PRTF) in her decision as required."  [Doc. 17 at 12.]  The Commissioner argues the ALJ properly evaluated Plaintiff's mental impairments under the special technique and documented her findings in the decision.  [Doc. 18 at 20–23.]

The ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments.   20 C.F.R. §§ 404.1520a(a), 416.920a(a). The psychiatric review

technique described in 20 C.F.R. §§ 404.1520a and 416.920a and summarized on the

Psychiatric Review Technique Form (PRTF) requires

> adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 61 Fed. Reg. at 34,477. Under the special technique, the ALJ first evaluates

the claimant's pertinent symptoms, signs, and laboratory findings to determine if the

claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1),

416.920a(b)(1). Then the ALJ rates the claimant's degree of functional limitation resulting

from the impairment. *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2). The rating determines

whether the claimant's impairment is severe or not severe. *Id*. §§ 404.1520a(d),

416.920a)(d).

To rate a claimant's degree of functional limitation, the ALJ considers four broad

functional areas: activities of daily living; social functioning; concentration, persistence, or

pace; and episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3); *see id* .

Pt. 404, Subpt. P, App. 1, § 12.00C. To arrive at a rating, the ALJ considers factors such

as "the quality and level of [the claimant's] overall functional performance, any episodic

limitations, the amount of supervision or assistance [the claimant] require[s], and the

26

settings in which [the claimant is] able to function." *Id*. §§ 404.1520a(c)(2), 416.920a(c)(2); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C–H.  The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme.  *Id*. §§ 404.1520a(c)(4), 416.920a(c)(4).    For the fourth functional area—episodes of decompensation—the ALJ uses a four-point scale: none, one or two, three, and four or more.  *Id*.  If the ALJ rates the claimant's degree of limitation as none or mild in the first three functional areas and none in the fourth functional area, the ALJ will usually conclude the claimant's impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  *Id*. §§ 404.1520a(d)(1), 416.920a(d)(1).

### The ALJ's Evaluation of Plaintiff's Mental Impairments

The ALJ conducted a listing analysis with respect to Plaintiff's mental impairments under Listings 12.02, 12.04 and 12.05, finding that neither "paragraph B" nor "paragraph C" criteria were met.  [R. 23–24.]  In evaluating the four broad functional areas, as described above, ALJ found as follows:

> In activities of daily living, the claimant has a mild restriction. In her filed function reports, the claimant indicated that she has no problem with personal care including dressing, bathing, caring for her hair, feeding herself, and using the toilet (Exhibits 4E, p.2 and Exhibit 7E, p. 7).  However, the claimant also indicated that she does not always prepare meals and when she does she has to rest because she is unable to "lift the pots and pans" like she once could (Exhibits 4E, p.3 and 7E, p.8).  Additionally, the claimant indicated that she gets help from her children with chores such as lifting the laundry basket or dusting (Exhibits 4E, p.3 and 7E, p.8).

In social functioning, the claimant has moderate difficulties. In her first filed function report, the claimant indicated that she tries to "get out every day" (Exhibit 4E, p.2). However, in a subsequent report, the claimant indicated that she does not go out as much now because she does not like to be in crowds (Exhibit 7E, p.10). Socially, the claimant indicated that she visits her sisters, mother, and friends sometimes but that "mostly" they talk on the phone (Exhibit 7E, p.11). Additionally, the claimant indicated that she goes to church but that her joint aches prevent her from going as often as she would like (Exhibits 4E, p.5 and Exhibit 7E, p.11 ).

With regard to concentration, persistence or pace, the claimant has moderate difficulties. According to her filed function reports, the claimant is able to drive a car and she is able to shop in stores (Exhibits 4E, p.4 and Exhibit 7E, p.9). Although the claimant indicated that headaches reduce her ability to read, the claimant indicted that she reads two to three times weekly and she watches the television every day (Exhibits 4E, p.5 and Exhibit 7E, p.11). Worth noting, the claimant completed her own filed function report on July 20, 2011, but a subsequent report was completed by a person named Katie Yonce on January 10, 2012 (Exhibits 4 E, p. 8 and Exhibit 7E, p.13).

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are not satisfied.

I have also considered whether the "paragraph C" criteria were satisfied. The claimant does not meet the "paragraph C" criteria of any of the considered listings. Specifically, the claimant does not have a medically documented history of chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the necessary qualifying factors. As to the qualifying factors, the claimant does not have repeated episodes of decompensation, each of

extended duration.  Nor does the claimant possess a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.  Finally, the claimant does not have a current history of one or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement.  As a result, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" ("paragraph D" criteria of listing 12.05) criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

[R. 23–25.]

### *Discussion*

Upon review, the Court finds Plaintiff's argument to be without merit.  Contrary to Plaintiff's argument, the ALJ, consistent with the requirements of the regulations, evaluated Plaintiff's mental impairments under the special technique and documented her findings in the decision as cited above.  Accordingly, the decision of the Commissioner should not be reversed on this ground.

### <u>CONCLUSION</u>

Wherefore, based upon the foregoing, it is ordered that the Commissioner's decision be AFFIRMED.

29

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 11, 2016
Greenville, South Carolina